**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 05-CV-0035-CVE-FHM ) |
| GOLD BANK, | ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

The Court had previously ordered (Dkt. # 66) the parties to submit briefing on the viability of Gold Bank's defense under section 4A-505 of the Uniform Commercial Code ("UCC"). St. Paul Fire & Marine Insurance Company ("St. Paul") argues that Gold Bank may not rely on Okla. Stat. tit. 12A, § 4-505 because Gold Bank acted in bad faith by allowing Barry Schultz ("Schultz"), president of Custom Building Systems ("CBS"), to transfer funds from CBS' commercial accounts to Schultz's personal account. Section 4A-505 does not expressly include a good faith requirement, but plaintiff argues that the UCC imposes a general obligation to act in good faith which precludes Gold Bank's defense under section 4A-505. See Okla. Stat. tit. 12A, § 1-203. Gold Bank responds that good faith is not a prerequisite to its ability to raise section 4A-505 as a defense. The parties admit the law on this issue is unclear.

**I.**

CBS maintained a corporate bank account at Gold Bank for business purposes. Schultz, formerly the president of CBS, had a personal checking account at Gold Bank. In 1998, Gerald Schultz purchased CBS from Schultz, but Schultz remained at CBS as its president. From 1998 to

2003, Schultz or his secretary, Traci McGee, would call Gold Bank requesting that it transfer funds from CBS' commercial account to Schultz's personal checking account to cover overdrafts on his personal account. Gold Bank claims that it allowed these transfers because Schultz was an authorized signatory on CBS' account and has suggested it was not informed that Schultz was no longer the owner of CBS.[1] There is no dispute that the transfers occurred, but the parties dispute whether Schultz was authorized to make these transfers and whether Gold Bank acted in bad faith by allowing the transfers.

The parties disagree about what steps were necessary under the authorizations provided to Gold Bank by CBS to withdraw funds from its corporate account. St. Paul claims that any transfer from CBS' account that was not authorized by two signatories violated CBS' contractual agreement with Gold Bank. This was true until March 2, 2001, when CBS filed a new authorization that allowed a withdrawal by any one of the listed signatories on the account. St. Paul claims that the March 2, 2001 authorization was not accompanied by a board resolution and did not change the procedures for withdrawing funds from CBS' account. It appears that Schultz was given a significant amount of freedom by CBS' owner to arrange CBS' financial affairs. In any event, Gold Bank honored telephone requests by Schultz and his secretary to transfer funds from CBS' commercial account to Schultz's personal account.

In July 2003, Schultz was hospitalized for several weeks and CBS noticed possible accounting discrepancies after reviewing its ledgers. CBS discovered that Schultz was transferring business funds into his personal account, and CBS filed claims with St. Paul and Federal Insurance

---

[1] The evidence shows that Gerald Schultz purchased all of the outstanding stock of CBS, but left the day-to-day management of the company to Schultz. Schultz acted as president, chief financial officer, and manager of business operations for CBS.

2

Company ("Federal") to recover the stolen funds. Both insurers paid CBS' claim and in exchange, CBS assigned its claims resulting from Schultz's thefts to St. Paul and Federal. St. Paul filed this action against Gold Bank seeking to hold Gold Bank liable as a participant in the illegal activities of Schultz. In response, Gold Bank raised the statute of repose in Okla. Stat. tit. 12A, § 4A-505 as defense, both as a time limitation and as a bar to state law claims by plaintiff.

## II.

Gold Bank argues that section 4A-505 of the UCC, adopted in Oklahoma as Okla. Stat. tit. 12A, § 4A-505, precludes plaintiff's state law claims.[2] Section 4A-505 states:

> If a receiving bank has received payment from its customer with respect to a payment order issued in the name of the customer as sender and accepted by the bank, and the customer received notification reasonably identifying the order, the customer is precluded from asserting that the bank is not entitled to retain the payment unless the customer notifies the bank of the customer's objection to the payment within (1) one year after the notification was received by the customer.

St. Paul claims that Gold Bank may not rely on section 4A-505 as defense, because Gold Bank acted in bad faith by transferring funds from CBS' account without proper authorization. Section 1-203 of the UCC provides that "[e]very contract or duty within this act imposes an obligation of good faith in its performance or enforcement." See Okla. Stat. tit. 12A, § 1-203. However, no court has ruled on the issue presented in this case: whether section 1-203 of the UCC prevents a bank from raising section 4A-505 as a defense. St. Paul cites cases interpreting similar provisions of the UCC, but none of the cases cited by either party is directly on point.

In some sense, section 4A-505 provides a preclusion defense to plaintiff's state law claims, but its primary function is to act as a statute of repose. See Grabowski v. Bank of Boston, 997 F.

---

[2] Plaintiff has filed a complaint alleging claims for breach of contract, aiding and abetting a breach of fiduciary duty, and refund of payment under the UCC.

Supp. 111, 119 (D. Mass. 1997); Regatos v. North Fork Bank, 838 N.E.2d 629, 632-33 (N.Y. 2005). If a banking customer does not notify the bank of an unauthorized withdrawal within one year, the customer's claim is forever barred. The commentary to section 4A-505 provides some guidance as to the duty a bank owes its customer under this section:

> The one year period begins to run from the date notice of the payment is received by the bank's customer. Pursuant to 12A O.S. § 1-201(26), "notice" occurs when the bank takes such steps as may be reasonably required to inform the customer in the ordinary course of business. The notice is "received" if it is duly delivered to the customer's place of business. This means that notice is effective even if the payment order was engineered by the customer's agent to misdirect funds, and the same agent intercepts the notice. This language is similar to the rule governing forged signatures on the drawer's check under 12A O.S. 4-406(4), which places on the drawer the duty to control and supervise its accounts. . . . Unlike § 4-406, § 4A-505 specifically limits the bank's obligation to providing "notice," as defined in § 1-201(26).

Oklahoma Comments to Okla. Stat. tit. 12A, § 4A-505. The comments imply that the only obligation on the bank is to give proper notice to its customer in order to trigger the statute of repose. The comments analogize section 4A-505 to section 4-406, but clearly note the two provisions are distinguishable.

St. Paul contends that other provisions of the UCC incorporate the good faith requirement of section 1-203, and that evidence of bad faith can be used to defeat statutory defenses provided by the UCC. For example, plaintiff cites Appley v. West, 832 F.2d 1021 (7th Cir. 1987), as a case where the court prevented a defendant from relying on the statute of limitations under section 4-406

4

because of bad faith.[3] The Appley court simply held that the statute of limitations in section 4-406 did not apply to plaintiff's state law negligence claim alleging that the bank breached its fiduciary duty to its customer. Id. at 1031. In Lichtenstein v. Kidder, Peabody & Co., Inc., 777 F. Supp. 423 (W.D. Pa. 1991), the district court did not prevent the bank from raising a defense under section 4-406. Although the court noted that evidence of bad faith could overcome a defense under section 4-406, bad faith was an issue for the jury to determine. Id. at 427. Plaintiff cites Falk v. Northern Trust Company, 763 N.E.2d 380 (Ill. App. Ct. 2001), but that case merely held that plaintiff's allegations of bad faith were sufficient to survive a motion to dismiss her state law claims under section 4-406. Id. at 110-12. The Tenth Circuit has held that evidence of a bank's negligence is irrelevant under section 3-405 and did not preclude use of a defense under that section. Western Casualty & Surety Co. v. Citizens Bank of Las Cruces, 676 F.2d 1344 (10th Cir. 1982). The court refused to imply a standard of care into section 3-405, because there was evidence that the drafters intentionally omitted such language from the section. Id. at 1348. None of these cases supports plaintiff's position that evidence of bad faith precludes a defendant from raising a statutory defense provided by the UCC.

Plaintiff claims that the Eleventh Circuit has conclusively ruled that a showing of good faith is required before section 4A-505 may be raised, but plaintiff is mistaken. In Regions Bank v. The

---

[3] St. Paul's reliance on case law interpreting section 4-406 provides little assistance to the Court in determining whether section 4A-505 incorporates a good faith requirement, because section 4-406 expressly provides that lack of good faith precludes use of section 4-406 as a defense. Okla. Stat. tit. 12A, § 4-406 ("If the customer proves that the bank did not pay the item in good faith, the preclusion under subsection (d) of this section does not apply.") This suggests that the drafters of the UCC would have included a good faith requirement if they intended to incorporate such language in section 4A-505, but intentionally omitted this requirement.

5

Provident Bank, 345 F.3d 1267 (11th Cir. 2003), section 4A-505 was not raised as a defense by the defendant bank. Defendant claimed that Article 4A prevented plaintiff from relying on common law theories of relief when plaintiff's claims arguably fell within its provisions, but the Eleventh Circuit disagreed. In cases where the bank knew or should have known that it received funds that were fraudulently obtained, a state law requiring the bank to disgorge funds could be relied upon in addition to Article 4A as a basis for relief. Id. at 1275-76. This case does not stand for the proposition that any evidence of bad faith limits the use of a statutory defense under Article 4A. The reasoning of the court is sound to the extent that, when a plaintiff presents evidence of bad faith, state law claims for relief should not be precluded by Article 4A. See also Sheerbonnet, Ltd. v. American Exp. Bank, Ltd., 951 F. Supp. 403, 408-09 (S.D.N.Y. 1995). However, this does not prohibit a bank from raising a defense under 4A-505 merely because plaintiff alleges that the bank acted in bad faith.

Based on the cases cited by St. Paul, the Court will not strike Gold Bank's section 4A-505 defense. Although evidence of bad faith is admissible and may eventually overcome Gold Bank's 4A-505 defense, the mere inference of bad faith does not preclude Gold Bank from asserting this defense at trial. See Banco de la Provincia de Buenos Aires v. BayBank, 985 F. Supp. 364, 367 (S.D.N.Y. 1997) (Article 4A permits a court to consider evidence of a bank's bad faith when reviewing a wire transfer, but banks retain significant discretion when accepting or rejecting fund transfer requests). Contrary to plaintiff's argument, a showing of bad faith may defeat a statutory defense under the UCC, but evidence of good faith is not a prerequisite to asserting such a defense. St. Paul would like the Court to infer that Gold Bank acted in bad faith, but it would clearly be inappropriate to do so based on the record.

Article 4A defines good faith as "honesty in fact and the observance of reasonable commercial standards of fair dealing." Okla. Stat. tit. 12A, § 4A-105. This definition appears to incorporate a subjective and objective component.[4] A reasonable jury could conclude that Gold Bank believed it was authorized to make the transfers, or that Gold Bank breached a contract with its customer by allowing unauthorized fund transfers, but the facts cited by the parties do not conclusively settle the issue of bad faith. Even St. Paul admits that telephone transfers were authorized on CBS' account at one point, and Gold Bank may have erroneously continued the same practice after CBS amended its authorization forms. There is also conflicting evidence about how many signatures were required to withdraw funds from the account. There is no evidence that Gold Bank colluded with Schultz when he withdrew funds. Schultz was an authorized signatory on the account and president of CBS. The bank should have been alerted that Schultz was diverting company funds to his private account, but this is not the same as finding that Gold Bank acted in bad faith. The factual issues raised by the parties rely substantially on witness credibility issues that can not be resolved on briefs alone, and it would be improper to rule on the merits of Gold Bank's section 4A-505 defense at this stage.

**IT IS THEREFORE ORDERED** that defendant Gold Bank may rely on a defense under Okla. Stat. tit. 12A, § 4A-505; however, plaintiff may introduce evidence of bad faith to overcome Gold Bank's defense.

---

[4] Plaintiff has provided an expert report by Jack Geurkink which addresses the objective component of section 4A-105's good faith requirement, stating his opinion that Gold Bank did not follow reasonable commercial standards of fair dealing. However, his report does not address the "honesty in fact" requirement, which appears to require a subjective finding of dishonesty.

**IT IS FURTHER ORDERED** that the stay (see Dkt. ## 66, 74, 80) entered by the Court pending resolution of this issue is **lifted**. The Joint Motion to Extend Pretrial and Trial Date and for New Scheduling Order (Dkt. # 83) is **granted**. The August 31, 2006 pretrial conference and the September 18, 2006 jury trial are hereby **stricken**. The parties are directed to submit a Joint Proposed Scheduling Order no later than **September 1, 2006.**

**DATED** this 25th day of August, 2006.

*[signature]*

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT